**FINLEY v. STRIPLING.  (No. 1784.)**

Court 'of Civil Appeals of Texas.  Beaumont.
March 16, 1929.

Rehearing Denied March 27, 1929.

Adams &' McAlister, of Nacogdoches, for plaintiff in error.

Greve & Tucker, of Nacogdoches, for defendant in error.

O'QUINN, J. We shall refer to plaintiff in error as plaintiff and to defendant in error as defendant, that being their status in the trial court.

Plaintiff sued defendant in the district court of Nacogdoches county to recover in the sum of $4,000. In view of the nature of the suit and the action of the court in passing upon the sufficiency of plaintiff's petition, the petition will be set out in full.

Plaintiff's petition, omitting formal parts, reads:

"2. That on and prior to the 1st day of June A. D. 1924, E. B. Norman & Co. were engaged in the cotton and grain brokerage business, and as such maintained and kept open an office in the city of Nacogdoches, Texas, and as such operators of the aforesaid office, were members in good standing of the New Orleans Cotton Exchange and were affiliated and connected with said Exchange on the floor of said Exchange in such manner as to receive and execute, on said New Orleans Cotton Exchange, orders for cotton and grain futures, under and by virtue of the rules and regulations governing said New Orleans Cotton Exchange; and the said E. B. Norman & Co., was the owner and operator of the Nacogdoches Cotton Exchange, and as such were in good standing and doing business according to the laws of Texas governing the buying and selling of cotton and grain futures on the New Orleans Cotton Exchange floor at New Orleans and in conformity with the Cotton Future Act of the United States laws, of date of August 11, 1916.

"3. That on or about the 1st day of April, A. D. 1924, the plaintiff and defendant entered into a verbal contract, whereby they were to buy and sell futures in both cotton and grain through the Nacogdoches Cotton Exchange owned and operated in the City of Nacogdoches, by E. B. Norman .& Co.; and that the plaintiff was to execute and run the business of buying and selling in any way that might be best in his judgment; and that the parties were to receive one-half of the profit and share equally one-half of the losses in the project so long as the partnership existed, and in pursuance to said verbal contract, the plaintiff did engage in, buy and sell futures for and in behalf of the plaintiff and defendant according to the rules and regulations governing and buying and selling of cotton futures through the Nacogdoches Cotton Exchange to E. B. Norman & Co., of New Orleans, and while so engaged in carrying out the partnership, the plaintiff delivered and requested various ex-

ecutions of written order for cotton and grain of the New Orleans Cotton Exchange Floor, and that said orders were delivered and executed in accordance with the rules and regulations of the New Orleans Exchange, and were received and executed by the said E. B. Norman & Co., for the plaintiff on the floor of the New Orleans Cotton Exchange at New Orleans, and while the said E. B. Norman & Co. were in good standing with said Exchange, in behalf of and for the benefit of the plaintiff and defendant, and that during the months of April, May and June, 1924, and up to and including the 25th day of June, A. D. 1924, the plaintiff and defendant in accordance with said agreement executed various and sundry orders for cotton and grain futures on the New Orleans Cotton Exchange by and through E. B. Norman & Co. who were at the time of receiving the orders for execution in behalf of the plaintiff and defendant in good standing with said Exchange and were granted the rights and privileges of executing on the floor of the cotton exchange orders for various and sundry persons, according to the laws of Texas and in the light and in accordance and conformative with the Cotton Future Acts of the United States Laws of August 11th, 1916.

"4. And after entering into the aforesaid verbal contract and after conducting the partnership during April, May and June, 1924, and while so engaged, plaintiff and defendant lost $8,000, and that the said $8,000 was paid to E. B. Norman & Co. at the special instance and request of the defendant, which amount was paid by plaintiff for the project entered into by and between the plaintiff and defendant, and the amount was agreed to by and between the plaintiff and defendant, on October 15, 1924, and that the defendant on this date, agreed and had a settlement with the plaintiff for the transaction of cotton futures under and by virtue of the verbal agreement, and obligated and bound himself to pay to the plaintiff one half of the amount lost, to wit, one-half of $8,000, being $4,000, and the agreements had for payment of the same was as follows, to wit:

"The payment of $500 February 1st, A. D. 1925, and the balance of $3,500 and interest to be paid on or before October 15, 1925.

"5. That at the time of the adjustment of the difference between plaintiff and defendant for the transaction of the partnership as aforesaid, the defendant, to better secure said account, made, executed and delivered to the plaintiff his deed of trust on the following described real estate, situated in Nacogdoches county, Texas, and described thus: 'All that certain lot and parcel of land being situated in city of Nacogdoches, being a part of Starr survey, known as Sam Houston grant, beginning in the E. margin of Mound St., a S. W. cor of a lot described in a deed from W. U. Perkins to P. E. De-

Lamar, now owned by J. B. Atkins, and being the N W cor of the lot herein conveyed; Thence eastwardly with the S boundary line of the Atkins home place, and of the lot now belonging to the E. A. Blount estate, 244 ft. to the N. W. cor of the lot heretofore sold to Langston King and Hattie King to N. H. Duncan; Thence S with W boundary line of said Duncan lot 118 ft to its S W cor, being the S E cor of the lot herein conveyed; thence westwardly and parallel with the S boundary line of the Perkins DeLamar lot and with the N boundary line of the H. C. Hatchl home place 244 ft to a point in the E margin of Mound St., a stake for cor; thence Northwardly with E margin of Mound Street 118 ft to the place of BEGINNING, being the same land and premises conveyed to me by Geo. S. King on the 8th day of June 1923, deed recorded in Vol. 117, page 69, Deed Records of Nacogdoches County, Texas, and the same lot and premises conveyed by L. G. King and Hattie King to Geo. S. King on the 2nd day of October 1922, deed recorded in Vol. 105, page 629 Deed Records of Nacogdoches County, Texas—and all material purposes, together with all improvements, thereon.'

"6. That said amount is long past-due and unpaid, and defendant, though often requested, has refused, failed, and still fails and refuses, to pay the same or any part thereof, to the plaintiff's damages in the sum of $4,000, with 6 per cent. interest from the 15th day of October, A. D. 1924, as special damages on account of defendant's failure to pay the same when due.

"Wherefore, plaintiff prays the court that the defendant be cited to appear and answer this petition, and that on final hearing hereof he have judgment for his debt, interest, and cost of suit, and for foreclosure of his lien on the above-described land and premises; that the same be decreed to be sold according to law; that the sheriff or other officer executing said order of sale shall place the purchaser of said property sold under provision of said sale in possession thereof within thirty (30) days after the day of sale; and for such other and further relief, special and general, in law and equity, that plaintiff may be justly entitled to," etc.

The court sustained defendant's general demurrer to plaintiff's petition, and also sustained his special exception wherein it was urged that plaintiff's petition showed upon its face that the contract sued on was a *gambling contract against public policy*, unlawful and void, and could not be made the basis of law for a cause of action. (This exception, though denominated a special exception is, in effect, a general demurrer.) Plaintiff refusing to amend, the court dismissed the suit. By writ of error plaintiff has brought the case before us for review of the court's action in dismissing his suit.

Plaintiff's first proposition is that

"it is not illegal to deal in cotton futures when the transaction is a bona fide transaction and carried on through a duly and legalized commission merchant, who has rights on the Cotton Exchange floor."

If we understand plaintiff's contention, it is that the law does not forbid dealing in futures if it is done through a regular cotton exchange. We are cited to articles 657 and 658 of the Penal Code of 1925 as sustaining this contention. Article 657 permits the making of contracts for the purchase of cotton and grain *to be delivered in the future*, but it does not permit the mere "dealing in futures" of such commodities where it is contemplated by the parties to the contract that such commodities *should not be actually delivered*, but that settlement might be made by paying the difference in the contract price at the time of such delivery and the price named in the contract. This would be a wagering contract and is prohibited by the statute, for it specially provides that all contracts where it is not contemplated by the parties thereto that there shall be an actual delivery of the commodity bought and sold shall be unlawful. Article 658 specifically declares that all such contracts where it is not the bona fide intention of the parties that actual delivery of the commodity shall be made shall be null and void, and no action thereon shall be maintainable at the suit of any party. It is *not alleged* in plaintiff's petition that *actual delivery of the cotton or grain was intended by the parties*, but, to the contrary, it is alleged that the intention of the parties was "*to buy and sell futures* in both cotton and grain." This contract "to buy and sell futures" in cotton is repeatedly alleged throughout the petition. We think it very clear that the petition on its face disclosed the unlawfulness of the contract sought to be enforced, and that the court correctly sustained the general demurrer urged against it. Articles 657, 658, Vernon's P. C.; Norris v. Logan (Tex. Civ. App.) 94 S. W. 123, affirmed 100 Tex. 228, 97 S. W. 820; Allen v. Denman (Tex. Civ. App.) 278 S. W. 899; Merriam & Millard Co. v. Cole (Tex. Civ. App.) 198 S. W. 1054; Pate v. Wilson Bros. (Tex. Civ. App.) 208 S. W. 235; Seeligson v. Lewis & Williams, 65 Tex. 215, 57 Am. Rep. 593; Hibbler v. Howe (Tex. Civ. App.) 295 S. W. 299.

But plaintiff by his second proposition insists: "The transaction as pleaded and without any explanation shows that the original contract, if it be illegal as the court seems to have held it, was taken out of the illegal realm when plaintiff in error and defendant in error had a settlement and defendant in error agreed to the amount of $4,000 and executed a deed of trust to cover his part due for the transaction, the consideration passing for the new contract to February 1st., and October 15th, 1925, respectively; and the transaction is legal, and when the petition is looked to, the same presents a cause of action and not one of a gambling transaction."

While it is true that where as the result of the execution of an illegal contract some new right vests in one of the parties to said illegal contract, relief will not be denied in a suit which is brought, not for the enforcement of the illegal contract, but for a recovery upon or enforcement of the new right thereby, still it is well settled law that a plaintiff cannot recover in such suit when it is necessary for him to prove as a part of his cause of action his own illegal contract, or illegal transaction, but if he can show a complete cause of action without being obliged to prove his own illegal act, he may recover. Hall v. Edwards (Tex. Com. App.) 222 S. W. 167; Hartford Fire Ins. Co. v. G., H. & S. A. Railway Co. (Tex. Com. App.) 239 S. W. 919; Sanger v. Futch (Tex. Civ. App.) 208 S. W. 681; Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787. In the instant case, in order to recover plaintiff must prove the allegations of his petition, which on its face shows that the entire transaction upon which this suit is based was against public policy, in contravention of articles 657 and 658 of the Penal Statutes 1925 of the state, and hence unenforceable.

The general demurrer having been properly sustained, and plaintiff refusing to amend, the court did not err in dismissing the case. The judgment is affirmed.