Lindsay H. WHITTEN et al., Appellants,

v.

ALLING & CORY COMPANY, Appellee.

No. 844.

Court of Civil Appeals of Texas, Tyler.

July 17, 1975.

Parnass & Hill, Larry S. Parnass, Irving, Dennis R. Croman, Dallas, for appellants.

Allen, Knuths, Bracken & Short, Tedford E. Kimbell, Dallas, for appellee.

MOORE, Justice.

Plaintiff-appellee, Alling & Cory Company, instituted suit against appellants, Lind-

say H. Whitten and Harold D. Sewell, alleging a breach of a written surety agreement in which appellants guaranteed payment of the debts of Goodway, Inc., to the extent of $50,000.00 for goods and merchandise sold to Goodway, Inc. Appellants answered with a general denial and among other defenses set up a plea of failure of consideration. After a trial before the court sitting without a jury, the trial court rendered judgment in favor of appellee, Alling & Cory Company, for the sum of $49,909.02 together with interest, attorney's fees and costs. Appellants duly perfected this appeal.

We affirm.

The trial court filed extensive findings of fact and conclusions of law, finding among other things, that: (1) during the early part of 1972, Goodway, Inc., began to experience financial difficulty to the extent that by the summer of 1972, Alling & Cory Company began supplying Goodway with its paper products only on a C.O.D. basis, (2) during this period of time, the appellants were attempting to acquire the assets of Goodway, Inc., and were interested in keeping Goodway in business until they could complete their arrangements to purchase the company, (3) during the month of October, 1972, Goodway, Inc., placed certain orders for paper with Alling & Cory Company and was unable to pay on a certified check—C.O.D. basis, (4) Goodway was in immediate need of such paper in order to maintain its manufacturing operations and to fill certain orders which it had received, (5) at this time, Whitten and Sewell approached Alling & Cory Company and requested that the paper be shipped to Goodway on a credit or open account basis, in return for which Whitten and Sewell agreed to unconditionally guarantee, as sureties, the due and punctual payment, in accordance with the terms of sale, of the indebtedness incurred by Goodway for goods and merchandise sold by Alling & Cory to Goodway up to a maximum amount of $50,000.00. The ap-

pellants agreed that such guarantees could be reduced to writing and that they would execute a written agreement setting forth such guarantees, (6) in consideration of the guarantees and agreement of the appellants, Alling & Cory Company proceeded to deliver and release certain orders already received from Goodway and to fill other orders on a credit and open account basis, (7) during the months of October and November, 1972, Alling & Cory sold to Goodway on an open account basis goods and merchandise at an agreed price of $49,-909.02, which was delivered to and accepted by Goodway, Inc., (8) on November 22, 1972, in accordance with the previous oral agreement, Sewell and Whitten signed a written suretyship agreement which read in part, "That in consideration of the sale, on credit, of goods and merchandise by ALLINg (sic) & CORY COMPANY ('Alling & Cory') to GOODWAY, INC. and its subsidiaries ('Goodway'), the undersigned, as surety, hereby unconditionally guarantees the due and punctual payment in accordance with the terms of sale of all indebtedness, whether such indebtedness now exists or is hereafter incurred, owed by Goodway to Alling & Cory for all goods and merchandise sold by Alling & Cory to Goodway," (9) it was the intention of the parties that the written instrument dated November 22, 1972, constitute their agreements and guarantees concerning the sale on credit of goods and merchandise by Alling & Cory to Goodway, Inc., in October and November, 1972, (10) after the credit on the open account reached the sum of $49,909.02, in the middle of November, 1972, Alling & Cory refused to extend further credit and sold Goodway nothing on credit after the written suretyship agreement was executed on November 22, 1972, (11) Goodway, Inc., has never at any time paid for the paper sold on credit to it during the months of October and November, 1972, and was, at the institution of this suit, and still is indebted to Alling & Cory in a sum in excess of $200,000.00, (12) in accordance with the terms of the sale, the indebtedness due for the goods and

merchandise sold on credit to Goodway, Inc., by Alling & Cory Company in October and November of 1972 in the amount of $49,909.02 was due on December 10, 1972, (13) demand was made upon Sewell and Whitten to pay the sum of $49,909.02 to Alling & Cory on December 21, 1972, but such sum was never paid, (14) a reasonable attorney's fee for representing the plaintiff in the trial of this cause is $5,000.00, (15) a reasonable attorney's fee to represent the plaintiff in this cause in an appeal to the Court of Civil Appeals is $1,000.00, (16) a reasonable attorney's fee to represent the plaintiff in this cause in a further appeal to the Supreme Court of Texas is $1,000.00.

The foregoing findings of fact have not been challenged by any of appellants' points of error. Such findings therefore constitute undisputed facts and are conclusive and binding on appellants as well as this court. *Curtis v. National Cash Register Co.,* 429 S.W.2d 909 (Tex.Civ.App., Amarillo, 1968, writ ref., n. r. e.); *Curry v. E. E. Stone Lumber Co.,* 218 S.W.2d 293 (Tex.Civ.App., El Paso, 1948, writ ref., n. r. e.).

By their first point, appellants urge that the trial court erred in rendering judgment against them on the basis of the suretyship agreement. First, they argue that at the time of the delivery of the merchandise, the suretyship agreement was oral. Therefore, they argue that the agreement was void because in contravention of the Statute of Frauds which provides that a promise to stand good for the debts of another must be in writing. Section 26.01(b)(2), Business and Commerce Code, Vernon's Ann.Tex. Statutes. Second, they argue that since the undisputed evidence shows that none of the merchandise was sold or delivered after the execution of the written suretyship agreement on November 22, 1972, Alling and Cory did not extend any credit in reliance on the written agreement. Consequently, they contend the written agreement was unenforceable, as a matter of law, because not supported by consideration. We are not in accord with this proposition.

The general rule is that a suretyship contract, even though executed subsequent to the principal contract will be regarded as being made at the same time so as to constitute a part of the same transaction, and be supported by the same consideration, and not require a new consideration, where it is executed pursuant to a prior agreement and as an inducement to the execution of the principal contract, especially where the transaction was entered into at the instance or request of the surety. 72 C.J.S. *Principal and Surety* § 67a; 74 Am.Jur.2d *Suretyship,* Sec. 24; 53 Tex.Jur.2d *Suretyship,* Sec. 24; *Kugle v. Traders State Bank of Cleburne,* 252 S.W. 208 (Tex.Civ.App., San Antonio, 1923, writ dism.); *Greenfield v. Anderson,* 67 S.W.2d 658 (Tex.Civ.App., Galveston, 1933, n. w. h.).

Upon applying the foregoing principles of law to the undisputed facts, it becomes apparent that there is no merit to appellants' contention that the suretyship contract was subject to the Statute of Frauds or was without consideration. The undisputed evidence shows that pursuant to the oral promise made by appellants, appellee relied on such promise and delivered the merchandise to Goodway, Inc. This, within itself, amounted to a benefit and a consideration flowing directly to appellants in that it kept Goodway in business while they negotiated for a purchase and sale of its assets. However, to support a contract of suretyship, it is not necessary that any consideration pass directly to the guarantor. A consideration moving to the principal alone will suffice to bind the guarantor. 53 Tex.Jur.2d Suretyship, Sec. 23; *Bonner Oil Co. v. Gaines,* 108 Tex. 232, 191 S.W. 552; 78 A.L.R.2d 1410. The fact that Goodway received the merchandise is undisputed. Appellants' first point is overruled.

In their second point, appellants complain of the action of the court in overruling their objections to certain invoices offered by appellee tending to prove the sale and delivery of the merchandise prior to the date of the execution of the written

agreement. Appellants objected to the invoices on the ground that was a variance between the pleading in that appellee's suit was founded on a written contract dated November 22, 1972, whereas the proof showed that the merchandise was delivered prior thereto pursuant to the oral suretyship agreement. The point is without merit and is overruled.

Here again appellants labor under the false assumption that the written suretyship agreement is unenforceable because the consideration passed under the oral agreement prior to the time the written contract was executed. As pointed out above, the written contract was executed pursuant to the oral agreement and therefore is supported by the same consideration. In suits for breach of a contract, a general denial puts in issue the allegation of the plaintiff that he performed under his contract and the amount of the damages flowing therefrom. 13 Tex.Jur.2d, *Contracts*, Sec. 381, p. 661, *Smith v. Walters*, 468 S.W.2d 889 (Tex.Civ.App., Dallas, 1971, n. w. h.). Even though the merchandise was delivered pursuant to the oral agreement, the invoices were clearly admissable to show that appellee had performed its contract as well as to show the amount of the damages.

By their third and final point, appellants urge that the trial court erred in awarding attorneys' fees to Alling & Cory in the absence of an express provision for attorneys fees in the suretyship agreement. We do not agree.

The suretyship agreement contains the following stipulation:

"The maximum amount for which the undersigned shall be liable hereunder, at any one time shall be Fifty Thousand ($50,000) Dollars, plus all costs and expenses, (*including counsel fees*) incurred in attempting to collect any amounts due under the Guaranty." (Emphasis supplied.)

■ The general rule in this state is that unless provided for by statute or by contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary in a suit upon a contract. *Wm. Cameron & Co. v. American Surety Co. of New York*, 55 S.W.2d 1032, 1035 (Tex.Com.App., 1932); *Mundy v. Knutson Construction Company*, 156 Tex. 211, 294 S.W.2d 371, 373 (1956).

■ The written agreement, as we construe it, clearly shows that appellants not only agreed to guarantee the sum of $50,-000.00, but further obligated themselves to pay all costs and expenses including attorneys' fees incurred by appellee in attempting to collect any amount due under the guaranty. Contrary to appellants' contention, we do not believe there is anything in language used by the parties creating an ambiguity. The instrument clearly shows that all parties contemplated that in the event litigation resulted, appellants would be obligated to pay appellee's attorney's fees. Appellants' third point is overruled.

■ By way of a counterpoint, appellee urged this court to invoke the provisions of Rules 435 and 438, Texas Rules of Civil Procedure, and assess a 10% penalty against appellants on the ground that the appeal is frivolous and taken for delay. Rule 435 provides that when the Court of Civil Appeals affirms the judgment, it may in its discretion assess damages not to exceed 10% in addition to the amount of the original judgment as the court may deem proper. Upon a review of the entire record, we do not believe we would be justified in concluding that the appeal was taken in bad faith and for delay only. For this reason, this court is of the opinion that the award of damages under Rule 435 is not warranted.

The judgment of the trial court is affirmed.